# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN BEHRMANN and NANCY BEHRMANN, Derivatively on Behalf of Nominal Defendant DENTSPLY SIRONA INC., | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| ERIC K. BRANDT, MICHAEL C. ALFANO, DAVID K. BEECKEN, MICHAEL J. COLEMAN, WILLIE A. DEESE, THOMAS JETTER, ARTHUR D. KOWALOFF, HARRY M. JANSEN KRAEMER, JR., and FRANCIS J. LUNGER, | ) ) ) ) ) ) ) ) ) |
| v. | ) ) |
| Defendants, | ) ) |
| DENTSPLY SIRONA INC., a Delaware Corporation, | ) ) ) |
| Nominal Defendant. | ) ) |

CASE NO.: 1:19-CV-00772-RGA

## PLAINTIFFS' OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION FILED JULY 31, 2020

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna, Esq.
Gregory M. Egleston, Esq.
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: egleston@gme-law.com

**O'KELLY & ERNST, LLC**
Ryan M. Ernst, Esq. (No. 4788)
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
Telephone: (302) 778-4000
Email: rernst@oelegal.com

*Counsel for Plaintiffs*

Dated: August 14, 2020

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ..................................................................................................1

        A.      The Report Erred Regarding The Parallel Securities Litigation Analysis ...............1

        B.      The Report Erred Regarding Director Casey ...........................................................3

        C.      The Report Erred Regarding The Goodwill Calculation Analysis ..........................4

        D.      The Report Erred Regarding Plaintiffs' Section 10(b) Claim .................................5

# TABLE OF AUTHORITIES

**CASES**                                                                                               **Page No.**

*Brenner v. Albrecht,*
  C.A. No. 6514-VCP,
  2012 Del. Ch. LEXIS 20 (Del. Ch. Jan. 17, 2012) ........................................................................ 2

*In re Countrywide Fin. Corp. Deriv. Litig.*,
  554 F. Supp. 2d 1044 (C.D. Cal. 2008) ................................................................................... 5, 6

*In re Finisar Corp. Deriv. Litig.,*
  No. C-06-07660 RMW,
  2012 WL 2873844 (N.D. Cal. July 12, 2012) ......................................................................... 5, 6

*In re Student Loan Corp. Derivative Litig.,*
  C.A. No. 17799,
  2002 Del. Ch. LEXIS 7 (Del. Ch. Ja. 8, 2002) ............................................................................ 3

*Marvin H. Maurras Revocable Trust v. Bronfman,*
  Nos. 12 C 3395 & 12 C 6019,
  2013 U.S. Dist. LEXIS 2013 WL 5348357 (N.D. Ill. Sept. 24, 2013) ........................................ 4

*Prof'l Cleaning and Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*,
  245 Fed. Appx. 161 (3d Cir. 2007) ............................................................................................ 3

*Rales v. Blasband*,
  634 A.2d 927 (1993) .................................................................................................................. 3

*Sciabacucchi v. Liberty Broadband Corp.,*
  C.A. No. 11418-VCG,
  2018 Del. Ch. LEXIS 252 (Del. Ch. July 26, 2018) ................................................................... 3

*Seminaris v. Landa*,
  662 A.2d 1350 (Del. Ch. 1995) .................................................................................................. 2

*Unión de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan v.*
*UBS Fin. Servs. Inc. of Puerto Rico*,
  704 F.3d 155 (1st Cir. 2013) ...................................................................................................... 4

**OTHER:**

CPLR 5501 ........................................................................................................................................ 1

Plaintiffs John and Nancy Behrmann ("Plaintiffs"), holders of approximately 500,000 shares of Dentsply Sirona Inc. ("Dentsply") stock, respectfully submit this Objection to certain portions of the Magistrate's Report and Recommendation filed July 31, 2020 [DI 24] (the "Report"), recommending that Defendants' Motion to Dismiss the Amended Complaint be granted in full and without leave to replead.

I.      **INTRODUCTION**

Leave to replead should be granted and then this action should be stayed pending the resolution of the two securities class actions: (1) *In re Dentsply Sirona, Inc. Shareholders Litig.*, No. 155393/2018 (N.Y. Sup. Ct.) ("Section 11 State Class Action") and (2) *In re Dentsply Sirona, Inc. Secs. Litig.*, Case No. 2:18-cv-07253 (E.D.N.Y.) (the "Securities Class Action").

  A.      **The Report Erred Regarding The Parallel Securities Litigation Analysis**

First, the Report holds that "the Dentsply board members named in [the Section 11 State Class Action] do not face potential liability" as the defendants' motion to dismiss was granted in that action. Report at 11. The Section 11 State Class Action ***is presently on appeal***[1] and Defendant Directors Brandt, Alfano, Beecken, Coleman, Deese, Jetter, Kowaloff, Kraemer, and Lunger still face potential liability in that matter. *See* Exhibit A attached hereto; Docket Entry 201.[2] Thus, the claims and liability against nine Director Defendants (Brandt, Alfano, Beecken, Coleman, Deese, Jetter, Kowaloff, Kraemer, and Lunger) are still alive.

---

[1]     In New York State Court practice, the Supreme Court, Appellate Division, where the appeal of the Section 11 State Class Action is pending, reviews both the law and the facts, even including exercises of discretion made at the trial level. CPLR 5501(c) ("The appellate division shall review questions of law and questions of fact on an appeal from a judgment or order of a court of original instance…."); *see also* Siegel, New York Practice, 4th ed., p. 15 (1991). Accordingly, both the factual findings and the legal conclusions of the trial court in the Section 11 State Class Action New York State Court are subject to reversal on appeal.

[2]     The plaintiffs' in the Section 11 State Class Action filed their Notice of Appeal on March 5, 2020, over four months before the Report was issued. However, due to the COVID-19 pandemic, the posting of the Notice of Appeal on the docket may have been delayed.

Second, six Board members (Defendants Brandt, Casey, Alfano, Coleman, Deese and Lunger) are named defendants in the Securities Class Action, ***which is also still an active case***. *See* Exhibit B attached hereto. The Report incorrectly holds that "Plaintiffs have not established that being named in an ongoing federal securities class action sufficiently impairs Defendants' ability to impartially consider a demand in this action" (Report at 12) and cites to *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995) to support this proposition. However, the facts in *Seminaris* are inopposite. In *Seminaris*, unlike here, the parties to the derivative action agreed to stay the action until the completion of the federal securities litigation. The stay expired when the federal securities litigation ended through a judicially approved settlement; thus, there was no threat of potential director defendant liability. Further, in *Seminaris*, unlike here, the company's board of directors created a special committee three weeks before the plaintiff filed his complaint and then issued a report recommending dismissal of this action. The Report's reliance on *Seminaris* is thus misplaced as the facts are inapplicable to the present case.

The facts of this action are more aligned with *Brenner v. Albrecht*, C.A. No. 6514-VCP2012 Del. Ch. LEXIS 20, at *18-19 (Del. Ch. Jan. 17, 2012) where the Chancery Court held:

> That consequence renders simultaneous prosecution of both actions unduly complicated, inefficient, and unnecessary. Prosecution of Brenner's derivative action would involve taking actions designed to refute the merits of the Company's defense of the Securities Class Action, and vice versa. The Individual Defendants are likely witnesses in both cases, but Brenner must attempt to undermine their credibility while the Company presumably will attempt to rely on their veracity. The potential for such conflicts, rather than the possibility that Company information might be disclosed notwithstanding the Court's confidentiality order, creates a significant risk that prosecution of Brenner's case will prejudice SunPower. For example, party admissions and adverse judicial rulings in this action might estop the Company from advancing contrary assertions on its own behalf in the Securities Class Action. Even if the plaintiffs in the Securities Class Action never learned about such admissions or rulings, there would remain a risk of inconsistent rulings between this Court and the District Court. ***In contrast, staying this action for the immediate future would minimize these risks of***

*prejudice to SunPower's defense of the Securities Class Action.*  [Emphasis added].

In short, ten (10) Director Defendants (out of a twelve (12) member board) face potential liability in parallel securities class actions and are thus interested.  The Report should have stopped there and denied Defendants' Motion to Dismiss.

### B.     The Report Erred Regarding Director Casey

The Report holds that "[t]he amended complaint does not adequately plead that Casey lacks independence solely based on his compensation as Dentsply's CEO" and "[t]he amended complaint does not allege that Casey's salary allows the Board to exert influence over him, or vice versa."  Report at 13.  Assuming *arguendo* that the Report is correct, Plaintiffs should have been given leave to amend their complaint as it is the first complaint to be reviewed by a judicial officer.  The Third Circuit has stressed that "[l]iberality is the keystone of [amending federal complaints] . . . [and] [u]nder [this] liberal pleading philosophy . . ., an amendment should be allowed whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a result of the delay."  *Prof'l Cleaning and Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 Fed. Appx. 161, 165 (3d Cir. 2007).

Further, courts have held that there is reason to doubt the independence of a director who also serves as officer in the company due to his/her substantial financial interest in maintaining their employment positions.  *See, e.g.*, *In re Student Loan Corp. Derivative Litig.*, C.A. No. 17799, 2002 Del. Ch. LEXIS 7, at *8 (Del. Ch. Ja. 8, 2002) ("Indeed, the complaint alleges facts that suggest that all four of the affiliated directors have committed their careers to Citigroup.  As a result, it is difficult to conceive of how any of them could impartially consider a demand in this case."); *see also Sciabacucchi v. Liberty Broadband Corp.*, C.A. No. 11418-VCG, 2018 Del. Ch. LEXIS 252 (Del. Ch. July 26, 2018); *Rales v. Blasband*, 634 A.2d 927, 937 (1993) (concluding

that the complaint sufficiently created reasonable doubt that the CEO/director was independent where he received a large salary from the company). Indeed, the First Circuit found that such a lack of independence may have existed where a director was also an executive in the company. *See Unión de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan v. UBS Fin. Servs. Inc. of Puerto Rico*, 704 F.3d 155, 165-66 (1st Cir. 2013) (holding that where a director serves as "an executive employee" of an entity and was "involved at a high level" at the company, "these facts alone are sufficient to create a reasonable doubt that he could be disinterested and independent in evaluating plaintiffs' demand in this case"); *Marvin H. Maurras Revocable Trust v. Bronfman*, Nos. 12 C 3395 & 12 C 6019, 2013 WL 5348357, at *18 (N.D. Ill. Sept. 24, 2013) ("assuming" that the company's president and CEO lacked independence) (citing *In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215-VCG, 2011 Del. Ch. LEXIS 151, 2011 WL 4826104, at *7 (Del. Ch. Oct. 12, 2011)).

### C.     The Report Erred Regarding The Goodwill Calculation Analysis

The Report holds that "Defendants' failure to account for Patterson's inventory glut and the Distributors' anticompetitive scheme in their goodwill calculation does not amount to an actionable misstatement where, as here, the amended complaint does not adequately allege that the Director Defendants had knowledge of those facts. […] Defendants could not incorporate into the Registration Statement's goodwill calculations considerations which were not known to them at the time." Report at 16. Further, the Report held that "[w]here, as here, an alleged omission is based on the timing of an accounting write down, it is not enough to allege the write down should have occurred earlier." Report at 16.

Every single one of the nine (9) Director Defendants was either a director of Sirona before the Merger[3] (Defendant Jetter since 2010 and Defendants Beecken, Kowaloff and Kraemer since 2006) or a director of Dentsply (Defendants Brandt, Alfano, Coleman, Deese and Lunger) before the Merger.  Plaintiffs demonstrated in their Opposition to Defendants' Motion to Dismiss that the core operations doctrine operates to establish the inference that the Patterson contract with Sirona was so essential to the financial health of Sirona, and the "merger of equals" to be created, that it is inconceivable that all nine (9) Director Defendants did not know about the Sirona sales to Patterson and Patterson's glut of inventory (the obsolete inventory build-up), and coming renunciation of the supply contract.  With leave to replead, Plaintiffs will bolster their allegations as to these Directors' knowledge based on their own representations as to the due diligence conducted by both sets of directors before the merger of equals was approved.

### D. The Report Erred Regarding Plaintiffs' Section 10(b) Claim

The Report held that the "amended complaint does not address the role of each director Defendant individually in advancing the alleged misstatements or omissions regarding Patterson's excess inventory or the Distributors' anticompetitive scheme" and that "the federal securities claims amount to 'an impermissible repacking of deficient state law claims.'"  Report at 38.

In order to show the Director Defendants' scienter, Plaintiffs are required to raise a "cogent and . . . compelling" inference that they were aware *or should have been aware* of (1) Patterson's growing excessive inventory (the obsolete inventory build-up)[4] and (2) the Directors caused the Company to violate the securities laws.

---

[3]   On February 29, 2016, Dentsply International Inc. and Sirona Dental Systems, Inc. merged (the "Merger").
[4]   Patterson's business was core to the Company.  Patterson had been Sirona's largest customer, accounting for between 28% and 38% of its total revenues on a quarterly basis leading up to the Merger. Amended Complaint (D.E. 11) at ¶¶ 91, 229. Through September 30, 2017, Patterson served as the

5

First, courts have specifically rejected this very argument in finding plaintiffs stated derivative claims for securities fraud. *See In re Finisar Corp. Deriv. Litig.*, No. C-06-07660 RMW, 2012 WL 2873844 (N.D. Cal. July 12, 2012); *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008). In *Finisar*, the director and officer defendants sought to dismiss, *inter alia*, the plaintiffs' derivative Section 10(b) claim, arguing that because "defendants are Finisar; therefore, Finisar knew the financial statements were misleading (because defendants caused them to be), and could not have been deceived by those statements in issuing or repurchasing stock." 2012 WL 2873844, at *17. The court explicitly rejected that argument, holding that "if Finisar issues or purchases stock at a loss, it does not do so recklessly[—]it is a puppet whose strings are pulled by the very directors and officers responsible for the fraud." *Id.*

The *Countrywide* court's reasoning is similar. There, the defendants argued that because "the same [directors and officers] who made the fraudulent misstatements also made [the company's] repurchase decision," the company could not have been defrauded. 554 F. Supp. 2d at 1073. Expressly rejecting that argument, the Countrywide court held that a Section 10(b) claim may be foreclosed only when "the shareholders, not only the officers and directors, are involved in the alleged fraud." *Id.* (collecting cases demonstrating that the knowledge of defrauding directors is not imputed to the corporation absent "disclosure by the allegedly defrauding directors and ratification by the remaining directors or shareholders" (quoting *In re Whitehall Jewellers, Inc. S'holder Deriv. Litig.*, 2006 WL 468012, at *12 (N.D. Ill. Feb. 27, 2006))). Again, the core operations doctrine, the long tenure of the nine (9) Directors on the boards of both Dentsply and Sirona, the importance of Patterson to Sirona, the importance of Sirona's financial health to

---

exclusive distributor in the U.S. for most of the products sold through the Company's Technology segment. *Id.*

6

Dentsply's desire to have a merger of equals with Sirona, the extensive due diligence conducted by all nine (9) Director Defendants during the run-up to the merger, all create the compelling inference that the nine (9) Director Defendants had actual knowledge or ignored the red flags of the massive inventory and goodwill write down and misled their shareholders, including Plaintiffs to their massive financial loss.  Leave to replead should be granted so Plaintiffs can more clearly make these allegations.

DATED: August 14, 2020

        **O'KELLY & ERNST, LLC**

        */s/ Ryan M. Ernst*
        Ryan M. Ernst, Esq. (No. 4788)
        824 N. Market Street, Suite 1001A
        Wilmington, DE 19801
        Telephone: (302) 778-4000
        Email: rernst@oelegal.com

        **GAINEY McKENNA & EGLESTON**
        Thomas J. McKenna
        Gregory M. Egleston
        501 Fifth Avenue, 19th Floor
        New York, NY 10017
        Telephone: (212) 983-1300
        Facsimile: (212) 983-0383
        Email: tjmckenna@gme-law.com
        Email: egleston@gme-law.com

        *Attorneys for Plaintiffs*

## RULE 72 CERTIFICATION

I hereby certify that, in accordance with Fed. R. Civ. P. 72(a), D. Del. LR 72(b), and the Court's Standing Order dated October 9, 2013, that the objections raised in Plaintiffs John and Nancy Behrmann's Objection to the Magistrate Judge's Report and Recommendation [DI 24] do not raise new legal or factual arguments.

DATED: August 14, 2020

**O'KELLY & ERNST, LLC**

*/s/ Ryan M. Ernst*
Ryan M. Ernst, Esq. (No. 4788)
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
Telephone: (302) 778-4000
Email: rernst@oelegal.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: egleston@gme-law.com

*Attorneys for Plaintiffs*